Reyna, Circuit Judge, dissenting.
The sole issue on appeal is whether the "attachment surface" in claim 12 must be secured to the ballast cover of the existing light fixture. Because I conclude that the district court correctly construed "attachment surface" to mean "layer of the housing that is secured to the ballast cover," I respectfully dissent.
Claim 12 does not expressly require that the attachment surface be attached to anything other than to the illumination surface. However, claim 12 does expressly describe a lighting apparatus "for retrofit with an existing light fixture having a ballast cover ." '747 patent col. 11 ll. 26-27 (emphases added). The majority fails to give meaning to these claim terms by holding that "attachment surface" means "layer of the housing to which the illumination surface is secured," and concludes that the patent owner is entitled to patent scope that is neither described in nor supported by the specification.
The plain language of claim 12, read in the context of the specification, implicitly *1380 requires that the attachment surface be secured to the ballast cover to achieve the retrofit function. Apart from the preamble, which the parties agree is limiting, claim 12 contains no reference to the ballast cover, the existing light fixture, or where or how the apparatus is retrofit with the existing light fixture. Because the only feature of the existing light fixture described in claim 12 is the ballast cover, a person of ordinary skill would necessarily conclude that the attachment surface is secured to the ballast cover of the existing light fixture. This would not be a big leap.
The disputed term "attachment surface" appears only in claims related to the retrofit function-namely claim 12, the disputed claim, claim 29, which describes a method for retrofitting a light fixture, and various associated dependent claims. As the word "retrofit" in the preamble of claim 12 implies securing the lighting apparatus to something, it is reasonable to conclude that the "attachment surface" is involved with achieving the retrofit function.
The structure of the claim language gives further support that the "attachment surface" has a function associated with the retrofit function. Along with the "illumination surface," the attachment surface is one of two identified surfaces of the lighting apparatus's housing, and is secured to the illumination surface via a fastening mechanism. See id. col. 11 ll. 28-29, 37-39. The illumination surface has an explicit function in addition to simply being secured to the attachment surface, suggesting that the attachment surface likewise has an additional "attachment" function other than attachment to the illumination surface. See id. col. 11 ll. 30-31.
Every single embodiment of the retrofit lighting apparatus in the specification describes securing the attachment surface to the ballast cover of the existing light fixture. The specification expressly discloses retrofitting by securing the attachment surface to the ballast cover in the summary of the invention, see '747 patent col. 2 l. 65-col. 3 l. 10; col. 3 ll. 46-49 (describing "[a] method for retrofitting a light fixture with an energy-efficient lighting apparatus," in which "[t]he method also involves securing the attachment surface of the housing to the ballast cover " (emphasis added) ), and in the embodiment disclosed in connection with Figure 5, see id. col. 9 ll. 8-10. In describing Figure 5, the specification states that "[i]n typical operation, the attachment surface 530 is secured to the ballast cover." Id. col. 9 ll. 17-19. The specification provides no other explanation for how the lighting apparatus may be retrofit to the existing light fixture. Taken collectively, these disclosures in the claims and the specification-and the lack of any reference in the intrinsic record showing the attachment surface being secured to anything other than the ballast cover-teach a skilled artisan that the attachment surface described in claim 12 is secured to the ballast cover of the existing light fixture. See MBO Labs., Inc. v. Becton, Dickinson & Co. , 474 F.3d 1323, 1329 (Fed. Cir. 2007) ("The words of patent claims have the meaning and scope with which they are used in the specification and the prosecution history.").
The majority ignores the retrofit function that the attachment surface plays in the lighting apparatus. See Medrad, Inc. v. MRI Devices Corp. , 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("It is ... entirely proper to consider the functions of an invention in seeking to determine the meaning of particular claim language."). Instead of recognizing the attachment surface as it is described throughout the specification-namely, to secure the lighting apparatus to the ballast cover-the majority's construction merely parrots features of the attachment surface, i.e., that it is attached to the illumination surface. In doing so, the majority fails to give meaning to "attached"
*1381 beyond what is already described in the claim language. See Apple, Inc. v. Ameranth, Inc. , 842 F.3d 1229, 1237 (Fed. Cir. 2016) ("Ideally, claim constructions give meaning to all of a claim's terms."). The majority's construction completely disregards the context in which "attachment surface" is used, both in connection with the retrofit function and the embodiments described in the specification. The majority does not point to anything in the specification describing a retrofit apparatus in which the attachment surface is not secured to the ballast cover. And there is no suggestion in the record that such an embodiment was ever contemplated or possessed by the inventor.
The majority's construction thus opens the door for the '747 patent to be subsequently invalidated for failure to satisfy the written description requirement. Stated differently, the majority's construction is a route towards rendering the patent invalid. See Carman Indus., Inc. v. Wahl , 724 F.2d 932, 937 (Fed. Cir. 1983) ("Claims should be so construed, if possible, as to sustain their validity. If such a construction would result in invalidity of the claims, the appropriate legal conclusion is one of noninfringement, not invalidity."). The majority likewise invites an enablement challenge; under the majority's approach, the retrofit aspect of the invention is merely an afterthought, one for which a skilled artisan must figure out for themselves the means by which the retrofit function of the invention shall be achieved, without any guidance from the patent. See Maj. Op. at 1379. This result is absurd, given that when the patent is read as a whole, such guidance is clearly provided.
Worse still, because the majority's construction "does not recite how the lighting apparatus is installed into an existing light fixture," id. , the majority effectively reads the retrofit function out of claim 12 and claim 29, the retrofitting method claim. Claim 29, while not at issue in this case, is instructive. See Phillips v. AWH Corp. , 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) ("Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims."). Claim 29 contains the same "attachment surface" limitation at issue in claim 12:
29. A method for retrofitting a light fixture with an energy-efficient lighting apparatus, the light fixture having a ballast cover, the method comprising:
providing a housing having an attachment surface and an illumination surface, wherein the illumination surface comprises a plurality of illumination surface holes;
providing a circuit board comprising a plurality of light-emitting diodes;
positioning the circuit board adjacent the housing so that the plurality of light-emitting diodes protrude through the plurality of illumination surface holes in the illumination surface; and
securing the attachment surface of the housing to the illumination surface, wherein the lighting apparatus is coupled to a wall switch and wherein the illumination of the light-emitting diodes is controllable based upon the position of the wall switch.
'747 patent, col. 12 ll. 52-60 (emphasis added).
We cannot discount the importance of the retrofit aspect to the invention as a whole. The specification clearly details the importance of retrofitting energy-efficient lighting apparatuses into preexisting light fixtures as a means of achieving energy savings without incurring significant expense. '747 patent, col. 9 ll. 5-10; col. 10 ll. 6-9. Yet the majority contends that claim 12, as an apparatus claim, is structurally complete as construed and need not describe the method of installation.
*1382 Maj. Op. at 1379. But because the majority's construction does not disclose how the apparatus is installed, securing the retrofit apparatus to the preexisting light fixture falls outside of the scope of the claims. If "attachment surface" is not construed as being secured to the ballast cover, claim 29 utterly fails to disclose how the retrofit function is to be achieved. As the district court properly noted during the Markman hearing, the lighting apparatus for retrofit "ha[s] to be attached to something" and cannot "hover ... like a ghost." J.A. 254.
The majority's reliance on the prosecution history is similarly misplaced. The prosecution history "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention" but "lacks the clarity of the specification and thus is less useful for claim construction purposes." Phillips , 415 F.3d at 1317 ; see also Grober v. Mako Prods., Inc. , 686 F.3d 1335, 1341 (Fed. Cir. 2012) ("[W]hile the prosecution history can inform whether the inventor limited the claim scope in the course of prosecution, it often produces ambiguities created by ongoing negotiations between the inventor and the PTO."). The original claim 12 reveals that, prior to amendment, the applicant understood that the invention requires the attachment surface to be secured to the ballast cover. See Phillips , 415 F.3d at 1317. Apart from the amendment itself, the prosecution history sheds no light on the purpose or effect of the amendment on claim scope. I conclude that the amendment is ambiguous as to the scope of the disputed limitation and has no effect on the proper construction of "attachment surface" in claim 12. An ambiguous amendment, such as here, should not negate the evidence in the specification and the conclusion implicit in the claim language that the attachment surface is secured to the ballast cover.
Because the intrinsic record fully supports the construction of attachment surface as being secured to the ballast cover, I respectfully dissent.